545 So.2d 339 (1989)
Susan J. GARDNER, Appellant,
v.
David F. GARDNER, Appellee.
No. 88-3028.
District Court of Appeal of Florida, Fourth District.
May 17, 1989.
Rehearing Denied July 19, 1989.
Gary S. Maisel of Patterson, Maloney & Gardiner, Fort Lauderdale, for appellant.
James I. Cohn of James I. Cohn, P.A., Fort Lauderdale, for appellee.
PER CURIAM.
This is an appeal from a final judgment in a dissolution action in which the mother *340 challenges the provisions for child custody and support and payment of a credit card debt. We affirm.
We have reviewed the entire record and conclude that there is substantial competent evidence to support the decision of the trial court to award primary residential custody of the parties' son to the father. The test on review of a custody decision is not to determine what we would have done, but rather to determine if there is substantial competent evidence to support the trial court's decision. Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975). Only if we determine that no reasonable person could take the view of the trial court, are we authorized to reverse. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
While on the cold record we may have decided the custody issue the other way, we believe the trial judge could have concluded that the father was a good parent before the separation of the parties; that the child had lived in the same home environment since his birth and would be better off continuing in that environment (including the child's private school); that the child wanted to remain in that environment and with the father; that the child was old enough (by now a teenager) and mature enough to be involved in the decision-making process; and that the father had devoted substantial attention to the child and his activities since the separation. The child had been in the temporary custody of the father for the approximate two-year period between the time the mother left and the final judgment was entered. On the other hand, it is apparent that the father reacted emotionally and immaturely to the wife's departure and improperly used the child as a means of taking out his anger against his wife. We simply believe the trial judge was the one to balance these considerations. Barnhill v. Barnhill, 353 So.2d 923 (Fla. 4th DCA 1978). We find no abuse of discretion on the child custody or support issue.[1]
We also find no abuse of discretion on the credit card issue. Neither party submitted proof of the actual charges made on the account. Rather, both testified that they had paid their part of the obligation. With the record in this posture, we do not believe an abuse of discretion has been demonstrated.
ANSTEAD and GARRETT, JJ., concur.
LETTS, J., dissents with opinion.
LETTS, Judge, dissenting.
Based on the record, I cannot agree with the grant of residential custody to the father. In the final judgment, the trial court based its conclusion on the twelve-year-old boy's testimony that he "wanted to live with his father." This is admittedly one of the statutory criteria to be considered under section 61.13(3), Florida Statutes (1987), but it is no panacea. The panacea, under the facts of this case, is the best interests of the child. Other criteria in that same statute include the mental health of the parents and which parent is more likely to allow the child frequent and continuing contact with his nonresidential parent. The record reveals, as plainly as the nose on my face, that this father is not in good mental health so far as his ex-wife and son are concerned. The spate of vilifying hate letters regarding his ex-wife, (which, on one occasion, required the son's services as mail carrier) confirm the "highly immature emotional control" attributed to the father by the court appointed psychologist. That same therapist also recommended that the father "must seek counselling so that he can provide [his son] with a psychologically healthy climate in the home." The final judgment neither ordered nor suggested that the father seek counselling.
That same psychologist also reported that "the father, as residential parent, is not apt to be cooperative or encourage the boy's positive relationship with the mother." The psychologist's written report also concluded by saying: "with counselling [the father] may be able to provide the boy with a healthy, masculine model, otherwise *341 it is fearful that the boy's continued residency with his father could lead to disaster for him in his relationship with both parents." It is true that the court appointed psychologist also said in his written report that it "would probably be damaging at this point for the mother to force [the son] to return to her house;" that statement gave me pause. However, the report which included that language was presented at a temporary hearing. By the time of the final hearing, the psychologist had changed his mind on this point and testified that he thought the child would be better off living with the mother.
I conclude from the record that although the father obviously loves and is attentive to his son, he is actively stirring up in his son a hatred for his mother, is not cooperative about continuing contact, and is not mentally healthy. By contrast, the record does not suggest the mother has any mental health problems, or that she opposes continuing contact, or that she is fomenting hate against the boy's father.
Under the totality of the circumstances, I think it was not in the best interests of the child, and therefore an abuse of discretion, to award residential custody to the father even though the boy stated a preference for his dad. The son has vacillated back and forth over with which parent he prefers to live. Moreover, while the court appointed psychologist agreed that the child was sophisticated and socially mature, he was careful to point out that although the child's preference for residential parent should be taken into consideration, it should not necessarily be controlling. Under the facts of this case, I do not think it should control.
On another relatively minor subject, it is clear from the final judgment that the court intended that the wife pay the American Express Card balance predicated on it being "approximately $1,900." In fact, the balance was $3,555 due to charges by the husband. On this point also, I would reverse and remand for further hearing.
NOTES
[1] We caution, however, that the issue of custody may be revisited by the trial court if the court's expectations of the father as a proper custodian should not be borne out. The trial court also has the option of appointing a guardian ad litem if subsequent circumstances justify it.